UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

YUN W. CHOUNG, and MOON CHOUNG,

Debtors,

LUIS ALBERTO MARTINEZ ARELLANO,

Plaintiff,

-against-

YUN W. CHOUNG, and MOON CHOUNG,

Defendants.

Bankruptcy Case No.: 1-25-42947-jmm

Adversary Case No.:

**COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)**

Plaintiff/Creditor LUIS ALBERTO MARTINEZ ARELLANO ("Plaintiff" or "Mr. Arellano"), by and through his attorneys, FISHER TAUBENFELD LLP, brings this adversary proceeding against Defendants/Debtors YUN W. CHOUNG, and MOON CHOUNG ("Defendants" or "Debtors") seeking a judgment seeking a judgment that the debts owed to Plaintiff by Defendants, arising out of the lawsuit Plaintiff filed in the United States District Court for the Southern District of New York against Debtors for their violations of the Fair Labor Standards Act of 1938, ("FLSA"), 29 U.S.C. §§201 *et seq.;* New York Labor Law, ("NYLL") § 650 *et seq.* and 12 New York Codes, Rules and Regulations § 142 (NYCRR), New York State Human Rights Law, NY Exec Law § 296 ct. seq,, and the Administrative Code of the City of New York § 8-101 *et seq.* which are non-dischargeable pursuant to section 523(a)(6) of Title 11 of the Bankruptcy Code (as incorporated by 11 U.S.C. § 1192), and, as grounds states as follows

## NATURE OF THE ACTION

1.      Plaintiff is a former employee of Debtors working at their dry cleaning business in New York City.

2.      Plaintiff filed a lawsuit in the District Court of the Southern District of New York in 2023 (the "Federal Action"). This Federal Action arose and Plaintiff sought damages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), New York Labor Law § 650 *et seq.* (NYLL), New York State Human Rights Law, NY Exec Law § 296 et. seq (2015) ("State Law"), and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law").

3.      Specifically, Plaintiff brought the Federal Action pursuant to the FLSA and the regulations thereto and NYLL and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 142 *et seq.*, based upon the following acts and/or omissions Defendants committed:

     i.      Defendants' failure to pay Plaintiff, who worked in excess of forty (40) hours per week, proper overtime compensation;

     ii.     Defendants' failure to provide Plaintiff with a proper wage notice and paystubs as required by NYLL § 195; and

     iii.    Defendants' failure to provide Plaintiff with spread-of-hours payments under 12 NYCRR 142-2.4.

4.      Additionally, Plaintiff also brought the Federal Action to challenge the following discriminatory and retaliatory acts and/or omissions Defendants committed in violation of State Law and City Law:

     i.      Defendants' refusal to grant Plaintiff a reasonable accommodation for his disability;

2

ii. Defendants' discriminatory termination of Plaintiff's employment because of his disability; and

iii. Defendants' retaliatory termination of Plaintiff's employment because he requested a reasonable accommodation.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) and a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

7. Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

8. Pursuant to Fed. R. Bankr. Proc. 7008(a), this Adversary Proceeding relates to Bankruptcy Case No. 1-25-42947, which was filed as a Chapter 7 case by the Debtors on June 20, 2025.

## PARTIES

### *Plaintiff*

9. Plaintiff is a New York resident who suffers from a disability due to high blood pressure, diabetes, and post-traumatic stress disorder related to a workplace injury.

10. Plaintiff was at all times an "employee" within the meaning of State Law, protected from discrimination on the basis of disability.

11. Plaintiff was at all times a "person" within the meaning of City Law, protected from discrimination on the basis of disability.

12. Plaintiff was an individual with a "disability," as defined by State Law and City Law.

### *Defendants*

13.    Debtors owned a dry cleaner and laundry based in New York, New York through their ownership of West 57 Cleaners Corp.

14.    At all relevant times, Defendants were Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

15.    At all relevant times, West 57 Cleaners Corp. did business in the State of New York and the City of New York and continuously employed more than four (4) people, and accordingly was an "employer" within the definitions of State Law and City Law.

16.    Defendants were the co-owners of West 57 Cleaners Corp. and at all relevant times held supervisory authority over Plaintiff by, inter alia, setting Plaintiff's schedule and pay, assigning tasks to Plaintiff, and taking disciplinary action against Plaintiff. Individual Defendants interviewed and hired Plaintiff.

17.    Defendants are a married couple.

18.    Defendant Yun Choung made the decision to terminate Plaintiff.

## FACTUAL ALLEGATIONS

19.    Plaintiff was employed by Defendants to clean clothes from mid-April 2019 until April 2023.

20.    At all times during his employment, Plaintiff was qualified for his position and was able to perform the essential functions of his job.

### *Defendants' Wage and Hour Violations.*

21.    At all times relevant hereto, Defendants committed the following acts and/or omissions intentionally and willfully, with knowledge that Defendants were violating federal and state law and that Plaintiff has been and continues to be economically injured.

22.    Plaintiff worked six days per week, from Monday through Saturday.

23.    At the beginning of his employment, Plaintiff was scheduled to work from 6:30 a.m. to 5:00 p.m.. However, he stayed until 6:30 or 7:00 p.m. two or three times per week.

24.    Plaintiff sometimes took 20-30 minutes for lunch, but three or four times per week he could not take a lunch break due to his heavy workload.

25.    After April 2022, Plaintiff's schedule changed such that he started work at 6:00 or 6:15 am, took two hours in the middle of the day to attend appointments, then returned to work until 7:30 or 8:00 p.m.

26.    Plaintiff initially earned $700 per week, then received a raise to $800 per week in July 2019. In January 2020 he got another raise to $900.

27.    During the height of the COVID-19 pandemic, Plaintiff's hours were reduced and his pay was cut to $600 per week. During this time, Plaintiff worked from 8:00 am to 2:30 or 3:00 pm Mondays through Saturdays.

28.    Plaintiff's hours and wages gradually increased until he returned to his previous hours and his wages were raised to $700 per week in Spring 2021.

29.    A few months later, Plaintiff received another raise and was making $800 per week.

30.    Every few months after this, Plaintiff's wages were raised by an extra hundred dollars until he was making $1,100 per week.

31.    Plaintiff made $1,100 per week through the end of his employment.

32.    Plaintiff was paid in two separate checks, or sometimes via one check and the rest in cash.

33.    Defendants paid Plaintiff this way to avoid paying taxes on all of Plaintiff's

5

pay.

34. The check from Corporate Defendant was always for $440. Mr. Choung informed Plaintiff that he was being paid $500, but that the check was only $440 due to tax supposedly being withheld.

35. Plaintiff was never paid at a rate of one and a half times his regular wage for the hours he worked above 40 per week.

36. Plaintiff regularly worked more than 10 hours per day, but Defendants never provided him with one additional hour of pay per day at the minimum hourly rate as required by the New York State spread-of-hours law.

### *Notice and Recordkeeping Violations*

37. Defendants failed to provide Plaintiff with a proper wage notice or paystubs in compliance with NYLL § 195.

38. Defendants did not provide Plaintiff with a notice specifying his rate of pay, the basis of pay, allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day.

39. Defendants also did not provide Plaintiff with a paystub specifying each of the regular and overtime hours he worked and containing all the other information required under NYLL § 195.

40. Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

### *Disability Discrimination*

41. In April 2022, Plaintiff was badly injured with a hot iron by a coworker and went to the hospital for treatment.

42.     The employee who injured Plaintiff was terminated.

43.     Mr. Choung refused to help pay Plaintiff's medical bill for the iron injury.

44.     After the incident, Plaintiff experienced symptoms of post-traumatic stress disorder ("PTSD"), including paranoia.

45.     Plaintiff would change his routes coming into work each morning, believing that he may be attacked by his previous coworker.

46.     Plaintiff's doctor recommended that he be medicated to treat his symptoms, and Plaintiff set up appointments with a psychologist.

47.     Defendants were aware that Plaintiff had high blood pressure, diabetes, and that he was being psychologically treated.

48.     Mr. Choung expressed annoyance with Plaintiff taking time off to attend medical appointments.

49.     On one occasion, Mr. Choung said to Plaintiff: "look at me, I have high blood pressure, and here I am working."

50.     Plaintiff would let Defendants know a week in advance of any of his appointments, then remind Mr. Choung the day before.

51.     Frequently, when Plaintiff asked for time off to attend appointments, Mr. Choung would say: "No, work comes first, sorry."

52.     Mr. Choung initially told Plaintiff that if he had to take time off, he could take his appointments in the morning. But then after Plaintiff moved his appointments to the morning, Mr. Choung changed his mind and said that the afternoon would be better.

53.     There were several times Plaintiff had to cancel appointments because Mr. Choung refused to let him go.

54.    Three days prior to his termination, Plaintiff provided a list of his upcoming appointments to Mr. Choung. Mr. Choung said, "No, this is not possible, this is too much."

55.    On Saturday, April 15, Mr. Choung terminated Plaintiff, saying that there were "changes coming" for the business and that Mr. Choung wouldn't "need" Plaintiff anymore.

56.    Mr. Choung informed Plaintiff that he had a "plan" for the business, and Plaintiff was not "part of the plan."

57.    Plaintiff was officially diagnosed with PTSD and is taking medication and going to therapy.

58.    In terminating Plaintiff, the Company discriminated against Plaintiff based on his disability and retaliated against him for requesting a reasonable accommodation.

59.    Defendants deliberately acted in an effort to avoid paying compensation for overtime and obtained Plaintiff's services through the false pretense that he was being paid properly when in actuality he was not.

60.    This scheme was done as part of an intentional effort to obtain labor services of Plaintiff, without regard to compliance with minimum labor standards, with the purpose of saving monies for the Defendants' willfully violative purposes at the deliberate economic harm and expense of the Plaintiff.

61.    The circumstances of employment implied that Defendants would properly pay Plaintiff for all hours worked, and it was justifiable for the Plaintiff to believe and rely on Defendants' accounting of his hours and calculation of pay.

62.    Further, Defendants acted willfully and maliciously by failing to reasonably accommodate Plaintiff's disability and by terminating him for requesting time off to care for a disability that was caused by Defendants' employee.

8

**FIRST CAUSE OF ACTION**
**(NON-DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523(a)(6) FOR WILLFUL AND MALICIOUS INJURY BY DEBTORS TO PLAINTIFF)**

63.     Plaintiff incorporates paragraphs 1-62 as set forth above, and states, that 11 U.S.C. § 1192(2) provides that a subchapter V debtor may not be discharged from debts "of the kind specified in section 523(a) ....."

64.     Plaintiff further states that 11 U.S.C. § 523(a)(6) provides that "a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity."

65.     Debtors willfully and maliciously violated labor laws by failing to pay Plaintiff properly in accordance with the FLSA and NYLL despite their awareness of the wage and hours laws.

66.     Similarly, Debtors willfully and maliciously violated State and City law by terminating Plaintiff because of his disability, denying him a reasonable accommodation and terminating him for requesting an accommodation.

67.     Defendants are jointly and severally liable under the FLSA and NYLL.

68.     Defendants are jointly and severally liable under NYCHRL and aided and abetted violations under the NYSHRL and NYCHRL.

69.     Debtors, by intending to deprive Plaintiff of his economic value and entitlement to statutorily mandated wages, Debtors willfully and maliciously caused intentional economic loss and injury to Plaintiff and therefore, the claims asserted against the Debtors by Plaintiff in the Federal Action are not dischargeable in bankruptcy pursuant to Section 523(a)(6) of the Bankruptcy Code.

70.    Debtors' failure to pay the Plaintiff properly in accordance with the FLSA and the NYLL caused a willful and malicious injury to him such that the debts owed by Debtors to the Plaintiff, including attorneys' fees and costs to which they are entitled under the FLSA and NYLL.

71.    Similarly, Defendants failure to accommodate Plaintiff's disability and their termination of his employment for requesting a reasonable accommodation and because of his disability caused a willful and malicious injury.

72.    Therefore, pursuant to 11 U.S.C. § 523(a)(6), Debtors are not entitled to a discharge of such debts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. enter judgment and an order denying Debtors a discharge with respect to the FLSA and NYLL and NYSHRL and NYCHRL debts owed to Plaintiff, including attorneys' fees and costs, pursuant to § 523(a)(6);

B. awarding Plaintiff's costs and reasonable attorneys' fees; and

C. awarding any relief the Court finds just.

Dated: September 22, 2025
      New York, NY

                                     Respectfully submitted,

                         By:    *Michael Taubenfeld*

                                   Michael Taubenfeld, Esq.
                                   FISHER TAUBENFELD LLP
                                   225 Broadway, Suite 1700
                                   New York, New York 10007
                                   Phone: (212) 571-0700

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ALBERTO MARTINEZ ARELLANO,

Plaintiff,

-against-

PARC WEST VALET CLEANERS, INC.,
WEST 57 CLEANERS CORP., YUN W
CHOUNG, and MOON CHOUNG,

Defendants.

Case No.:

**COMPLAINT**

Plaintiff LUIS ALBERTO MARTINEZ ARELLANO ("Plaintiff" or "Mr. Arellano"),

by and through his attorneys, FISHER TAUBENFELD LLP, alleges against Defendants PARC

WEST VALET CLEANERS, INC., WEST 57 CLEANERS CORP. ("Corporate Defendants"),

YUN W CHOUNG, and MOON CHOUNG ("Individual Defendants") as follows:

## NATURE OF THE ACTION

1.      This action arises and Plaintiff seeks damages under the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), New York Labor Law § 650 *et seq.* (NYLL), New

York State Human Rights Law, NY Exec Law § 296 et. seq (2015) ("State Law"), and the

Administrative Code of the City of New York § 8-101 *et seq.* ("City Law").

2.      Plaintiff brings this action pursuant to the FLSA and the regulations thereto

and NYLL and the New York Commissioner of Labor's Wage Order (the "Wage Orders,")

codified at 12 N.Y.C.R.R. 142 *et seq.*, based upon the following acts and/or omissions Defendants

committed:

        i.      Defendants' failure to pay Plaintiff, who worked in excess of forty (40)

                hours per week, proper overtime compensation;

    ii.    Defendants' failure to provide Plaintiff with a wage notice and proper paystubs as required by NYLL § 195; and

    iii.    Defendants' failure to provide Plaintiff with spread-of-hours payments under 12 NYCRR 142-2.4.

3.    Additionally, Plaintiff brings this action to challenge the following discriminatory and retaliatory acts and/or omissions Defendants committed in violation of State Law and City Law:

    i.    Defendants' refusal to grant Plaintiff a reasonable accommodation for his disability;

    ii.    Defendants' discriminatory termination of Plaintiff's employment because of his disability; and

    iii.    Defendants' retaliatory termination of Plaintiff's employment because he requested a reasonable accommodation.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to the FLSA, 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the state and city law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.    Jurisdiction is conferred on this Court because Plaintiff and Defendants named herein are residents of the State of New York and/or conduct business in the State of New York. Jurisdiction is conferred on this Court as to all causes of action because they arise under New York State and New York City statutory law.

6.      Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

7.      Pursuant to §8-502(c) of the New York City Human Rights Law, within ten days of the filing this Complaint with the Court, Plaintiff will serve a copy of this Complaint on the New York City Commission on Human Rights and on the Corporation Counsel for the City of New York.

## **PARTIES**

### *Plaintiff*

8.      Plaintiff is a New York resident who suffers from a disability due to high blood pressure, diabetes, and post-traumatic stress disorder related to a workplace injury.

9.      Plaintiff was at all times an "employee" within the meaning of State Law, protected from discrimination on the basis of disability.

10.     Plaintiff was at all times a "person" within the meaning of City Law, protected from discrimination on the basis of disability.

11.     Plaintiff was an individual with a "disability," as defined by State Law and City Law.

### *Defendants*

12.     The Company is a dry cleaner and laundry based in New York, New York.

13.     Upon information and belief, the Company is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 356 West 57th Street, New York, NY, 10019.

3

14.     Upon information and belief, at all times relevant hereto, the Company has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

15.     Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA.

16.     Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

17.     At all relevant times, Defendants have been Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

18.     At all relevant times, the Company has continuously been doing business in the State of New York and the City of New York and has continuously employed more than four (4) people, and accordingly is an "employer" within the definitions of State Law and City Law.

19.     Individual Defendants are the co-owners of the Company and at all relevant times held supervisory authority over Plaintiff by, inter alia, setting Plaintiff's schedule, assigning tasks to Plaintiff, and taking disciplinary action against Plaintiff. Individual Defendants interviewed and hired Plaintiff.

20.     Upon information and belief, Defendants are a married couple. Plaintiff knew Mr. Choung by a chosen English name, "James."

21.     Defendant "James" made the decision to terminate Plaintiff.

## **FACTUAL ALLEGATIONS**

22.     Plaintiff was employed by Defendants to clean clothes from mid-April 2019 until April 2023.

23.     At all times during his employment, Plaintiff was qualified for his position

4

and was able to perform the essential functions of his job.

### *Defendants' Wage and Hour Violations.*

24.    At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that Defendants have been violating federal and state law and that Plaintiff has been and continues to be economically injured.

25.    Plaintiff worked six days per week, from Monday through Saturday.

26.    At the beginning of his employment, Plaintiff was scheduled to work from 6:30 a.m. to 5:00 p.m.. However, he stayed until 6:30 or 7:00 p.m. two or three times per week.

27.    Plaintiff sometimes took 20-30 minutes for lunch, but three or four times per week he could not take a lunch break due to his heavy workload.

28.    After April 2022, Plaintiff's schedule changed such that he started work at 6:00 or 6:15 am, took two hours in the middle of the day to attend appointments, then returned to work until 7:30 or 8:00 p.m.

29.    Plaintiff initially earned $700 per week, then received a raise to $800 per week in July 2019. In January 2020 he got another raise to $900.

30.    During the height of the COVID-19 pandemic, Plaintiff's hours were reduced and his pay was cut to $600 per week. During this time, Plaintiff worked from 8:00 am to 2:30 or 3:00 pm Mondays through Saturdays.

31.    Plaintiff's hours and wages gradually increased until he returned to his previous hours and his wages were raised to $700 per week in Spring 2021.

32.    A few months later, Plaintiff received another raise and was making $800 per week.

33.    Every few months after this, Plaintiff's wages were raised by an extra hundred dollars until he was making $1,100 per week.

34.    Plaintiff made $1,100 per week through the end of his employment.

35.    Plaintiff was paid in two separate checks, or sometimes via one check and the rest in cash.

36.    One check was issued by the Corporate Defendant, and the other was a personal check issued by Mr. Choung.

37.    The check from Corporate Defendant was always for $440. Mr. Choung informed Plaintiff that he was being paid $500, but that the check was only $440 due to tax supposedly being withheld.

38.    The remainder of Plaintiff's wage was paid to him in cash before the COVID-19 pandemic started and in personal check afterwards.

39.    Plaintiff was never paid at a rate of one and a half times his regular wage for the hours he worked above 40 per week.

40.    Plaintiff regularly worked more than 10 hours per day, but Defendants never provided him with one additional hour of pay per day at the minimum hourly rate as required by the New York State spread-of-hours law.

### *Notice and Recordkeeping Violations*

41.    Defendants failed to provide Plaintiff with a wage notice or proper paystubs in compliance with NYLL § 195.

42.    Defendants did not provide Plaintiff with a notice specifying his rate of pay, the basis of pay, allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day.

43.    Defendants also did not provide Plaintiff with a paystub specifying each of the regular and overtime hours he worked and containing all the other information required under NYLL § 195.

44.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

### *Disability Discrimination*

45.    In April 2022, Plaintiff was badly injured with a hot iron by a coworker and went to the hospital for treatment.

46.    The employee who injured Plaintiff was terminated.

47.    Mr. Choung refused to help pay Plaintiff's medical bill for the iron injury.

48.    After the incident, Plaintiff experienced symptoms of post-traumatic stress disorder ("PTSD"), including paranoia.

49.    Plaintiff would change his routes coming into work each morning, believing that he may be attacked by his previous coworker.

50.    Plaintiff's doctor recommended that he be medicated to treat his symptoms, and Plaintiff set up appointments with a psychologist.

51.    Individual Defendants were aware that Plaintiff had high blood pressure, diabetes, and that he was being psychologically treated.

52.    Mr. Choung expressed annoyance with Plaintiff taking time off to attend medical appointments.

53.    On one occasion, Mr. Choung said to Plaintiff: "look at me, I have high blood pressure, and here I am working."

54.    Plaintiff would let Defendants know a week in advance of any of his appointments, then remind Mr. Choung the day before.

55.    Frequently, when Plaintiff asked for time off to attend appointments, Mr. Choung would say: "No, work comes first, sorry."

56.    Mr. Choung initially told Plaintiff that if he had to take time off, he could

take his appointments in the morning. But then after Plaintiff moved his appointments to the morning, Mr. Choung changed his mind and said that the afternoon would be better.

57.    There were several times Plaintiff had to cancel appointments because Mr. Choung refused to let him go.

58.    Three days prior to his termination, Plaintiff provided a list of his upcoming appointments to Mr. Choung. Mr. Choung said, "No, this is not possible, this is too much."

59.    On Saturday, April 15, Defendant "James" terminated Plaintiff, saying that there were "changes coming" for the business and that Defendant "James" wouldn't "need" Plaintiff anymore.

60.    Individual Defendant "James" informed Plaintiff that he had a "plan" for the business, and Plaintiff was not "part of the plan."

61.    Plaintiff was officially diagnosed with PTSD and is taking medication and going to therapy.

62.    In terminating Plaintiff, the Company discriminated against Plaintiff based on his disability and retaliated against him for requesting a reasonable accommodation.

## FIRST CAUSE OF ACTION
### (Overtime Wage Violations under the FLSA)

63.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

64.    Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

65.    At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiff at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek,

and willfully failing to keep required records, in violation of the FLSA.

66.     Plaintiff seeks damages in the amount of his respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (NYLL Overtime Wage Violations)

67.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

68.     New York law prohibits an employer from permitting an employee to work without paying overtime wages of 150% of his or her regular rate for all hours worked in excess of forty (40) in any workweek.

69.     Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

70.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (NYLL Failure to Notify)

71.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

72.     Pursuant to §195 of the NYLL, Defendants were required to provide

Plaintiff with a wage notice and statements.

73.  Defendants failed to provide Plaintiff with a proper wage notice and statements in accordance with §195 of the NYLL.

74.  As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages and seek damages in accordance with §198 of the NYLL for each week Defendants failed to provide such wage notice and statements, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (NYLL Spread-of-Hours)

75.  Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

76.  Pursuant to 12 NYCRR 142-2.4, Defendants had an obligation to compensate Plaintiffs for one hour's pay at the minimum wage for each hour he worked in excess of 10 hours in a given day.

77.  Although Plaintiff regularly worked more than 10 hours each day, Defendants failed to compensate Plaintiff for one hour's pay at the minimum wage.

78.  As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damage and seeks recovery for unpaid spread-of-hours payments in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (Disability Discrimination and Failure to Accommodate in Violation of State Law)

79.  Plaintiff repeats and realleges all paragraphs above as though fully set forth

herein.

80.    Plaintiff's impairment as described in this Complaint constitutes a disability.

81.    Defendants willfully violated State Law when they refused to accommodate Plaintiff and terminated Plaintiff's employment because of his disability.

82.    As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

83.    As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SIXTH CAUSE OF ACTION
### (Disability Discrimination and Failure to Accommodate in Violation of City Law)

84.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

85.    Plaintiff's impairment as described in this Complaint constitutes a disability.

86.    Defendants willfully violated City Law when they refused to accommodate Plaintiff and terminated Plaintiff's employment because of his disability.

87.    As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

88.    As a proximate result of the Defendants' unlawful acts of discrimination,

Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

### SEVENTH CAUSE OF ACTION
**(Retaliation in Violation of State Law)**

89.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

90.     Defendants retaliated against Plaintiff for engaging in protected activity by requesting a reasonable accommodation for his disability.

91.     By the acts and practices described herein, Defendants intentionally and willfully violated State Law by retaliating against Plaintiff.

92.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

93.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### EIGHTH CAUSE OF ACTION
**(Retaliation in Violation of City Law)**

94.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

95.     Defendants retaliated against Plaintiff for engaging in protected activity by requesting a reasonable accommodation of Plaintiff's disability.

96.     By the acts and practices described herein, Defendants intentionally and willfully violated the City Law by retaliating against Plaintiff.

97.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

98.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

**NINTH CAUSE OF ACTION**
**(Failure to Engage in a Cooperative Dialogue**
**In Violation of City Law)**

99.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

100.    By the acts and practices described above, Defendants unlawfully failed to engage in a cooperative dialogue in violation of the City Law.

101.    Defendants knew that their actions constituted unlawful discrimination and acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

102.    Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to his reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment awarding:

A. Compensatory Damages in an amount to be determined at trial;

B. Prejudgment Interest;

C. Liquidated Damages pursuant to the FLSA and NYLL;

D. Back Pay, Front Pay, and damages for all employment benefits Plaintiff would have received

but for the discriminatory and retaliatory acts and practices of Defendants;

E. Compensatory, punitive, mental anguish, pain and suffering damages sustained as a result of

Defendants' discriminatory and retaliatory conduct; and

F. Plaintiff's costs and reasonable attorneys' fees.

Dated: December 14, 2023
       New York, NY

Respectfully submitted,

By:    *Michael Taubenfeld*
       Michael Taubenfeld, Esq.
       FISHER TAUBENFELD LLP
       225 Broadway, Suite 1700
       New York, New York 10007
       Phone: (212) 571-0700

# United States Bankruptcy Court
## Southern District of New York

In re

Bankruptcy
Case No.  1-25-42947-jmm

YUN W. CHOUNG, and MOON CHOUNG

Debtor(s)

LUIS ALBERTO MARTINEZ ARELLANO,

Plaintiff(s)

Adversary
Proceeding No.

YUN W CHOUNG, and MOON CHOUNG

Defendant(s)

### SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
### IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

> **United States Bankruptcy Court, Southern District of New York**
> **One Bowling Green**
> **New York, New York 10004-1408**

Page 1 of 2

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney: |
|---|
| Michael Taubenfeld<br>c/o FISHER TAUBENFELD LLP<br>225 Broadway, Suite 1700<br>New York, New York 10007<br>Phone: (212) 571-0700 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court<br>Southern District of New York<br>One Bowling Green<br>New York, NY 10004-1408 | Room: |
| | Date and Time: |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_/s/_ _____

*Clerk of the Bankruptcy Court*

_____        By:    _/s/_ _____

*Date*        *Deputy Clerk*